IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FETHULLAH GÜLEN                    :        CIVIL ACTION
                                   :
        v.                         :
                                   :
MICHAEL CHERTOFF, et al.           :        NO. 07-2148

FILED

JUL 16 2008

MICHAEL ~~~~~, Clerk
By_____ Dep. Clerk

MEMORANDUM

Dalzell, J.                                     July 16, 2008

        Plaintiff Fethullah[1] Gülen challenges the denial by the

United States Citizenship and Immigration Services (USCIS) of his

petition on Form I-140 for classification as an alien of

extraordinary ability under 8 U.S.C. § 1153(b)(1)(A).  Before us

are a joint statement of facts, the complete administrative

record, and the parties' cross-motions for summary judgment.

There being no material factual disputes, the issues raised in

those motions are ripe for decision.

I.   Facts

        In late November of 2006, Gülen completed and filed an

Immigrant Petition for Alien Worker on USCIS Form I-140.  In that

petition, he sought classification as an alien of extraordinary

ability under 8 U.S.C. § 1153(b)(1)(A).  He paid a premium

_____

        [1] Throughout most of the record, plaintiff's given name
is spelled without the first "h."  It appears, however, that the
spelling we use above is correct.

processing fee of $1,000 in order to guarantee processing of his petition within fifteen days in accordance with 8 C.F.R. § 103.2(f)(1). Both of these forms were received at the Texas Service Center and processed on November 21, 2006. Administrative Record ("AR") at 242-245 (showing processing stamps applied by USCIS). On December 14, 2006, when USCIS had failed to act on his petition within fifteen days, Gülen requested a refund of the premium processing fee. To date, USCIS has issued no refund. Jt. Statement of Facts ("JSOF") ¶ 4.

On August 13, 2007, the USCIS Vermont Service Center[2] issued a request for evidence in support of Gülen's petition. The request characterized Gülen as a "clergyman" on the basis of the occupation listed on his original application. In its request, USCIS said of the thirteen letters of support that Gülen had already submitted, "[i]t is not clear how the writers of these letters gained their knowledge of you or your expertise in the field." AR at 141. In addition, with regard to photos of Gülen with various religious leaders, the USCIS requested "documentary evidence that establishes the importance of the

---

[2] It is not clear from the record precisely when or why Gülen's petition was transferred from the Texas Service Center to the Vermont Service Center.

2

photos and the how and why [sic] they were taken." Id. at 142.
USCIS also requested supporting documentation on the many
publications by and about Gülen that had already been submitted.
Id. Gülen responded on October 4, 2007 by providing the
additional evidence as requested.

On November 19, 2007, the Vermont Service Center denied
Gülen's petition.  On December 18, 2007, Gülen filed an appeal of
the denial, complaining that the "conclusions made in denial were
arbitrary & capricious, did not correctly apply the law." Id. at
136.  On March 7, 2008, after accepting additional briefing from
Gülen, the Administrative Appeals Office ("AAO") dismissed
Gülen's appeal.  Although this lawsuit was already pending, Gülen
amended his complaint to incorporate the denial of his I-140
petition.

## II. Analysis

### A. Jurisdiction

The Government does not assert that we lack
jurisdiction over this case, but we nevertheless have an
obligation to examine our jurisdiction, especially in light of
the constricted jurisdiction of federal district courts over
immigration matters since Congress adopted the REAL ID Act of

2005.  8 U.S.C. § 1252(a)(2)(B)(ii), the most relevant provision of that Act, only strips us of jurisdiction to review discretionary decisions of the Secretary of Homeland Security where that discretion is specified in the statute.  Khan v. Attorney Gen., 448 F.3d 226, 232 (3d Cir. 2006); Soltane v. United States Dep't of Justice, 381 F.3d 143, 146 (3d Cir. 2004). Rather than committing a decision on an extraordinary ability petition to the discretion of the Secretary of Homeland Security, 8 U.S.C. § 1153(b)(1) says that "[v]isas shall first be made available . . . to qualified immigrants who are aliens described in any of the following subparagraphs (A) through (C)" (emphasis added).  Thus, the statute does not explicitly commit this decision to the Secretary's discretion and, in fact, requires the issuance of a visa to aliens who meet the statutory qualifications.

Because we are aware of no provision that limits our jurisdiction over this matter, and the Government points to none, we find that we have jurisdiction to consider Gülen's petition.

### B.  Standard of Review

"Under the Administrative Procedure Act, we will reverse agency action if it is 'arbitrary, capricious, [or] an

4

abuse of discretion,' or 'unsupported by substantial evidence.'" Soltane, 381 F.3d at 148 (quoting 5 U.S.C. § 706). In this context, "[s]ubstantial evidence is more than a mere scintilla, but is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." Port Norris Exp. Co. v. Interstate Commerce Comm'n, 697 F.2d 497, 502 (3d Cir. 1982) (internal quotations omitted). Thus, if the Government can point to substantial evidence that supports the AAO decision, we must grant its motion for summary judgment. If it cannot, or if that decision represents an incorrect or unreasonable application of the relevant law, we must grant Mr. Gülen's motion.

### C.  Extraordinary Ability

By statute, an alien of extraordinary ability is one who "has extraordinary ability in the sciences, arts, education, business, or athletics which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation," "seeks to enter the United States to continue work in the area of extraordinary ability," and whose "entry into the United States

will substantially benefit prospectively the United States." 8 U.S.C. § 1153(b)(1)(A). The enabling regulations describe extraordinary ability as "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor." 8 C.F.R. § 204.5(h)(2). In order to demonstrate extraordinary ability, an applicant must include either evidence of a major, international award such as a Nobel Prize or at least three of the ten criteria listed in the regulations. Id. § 204.5(h)(3).

The first issue in this case is how to define the field of endeavor for purposes of this analysis. The AAO examiner determined that Gülen's primary field of endeavor was education, finding that this was the only statutory category in which Gülen's accomplishments could arguably fit. AR at 3-4. Gülen argues that this analysis unduly constrains the statutory language that defines the possible fields of endeavor, "sciences, arts, education, business, or athletics," 8 U.S.C. § 1153(b)(1)(A), and that his accomplishments in such fields as theology, political science, and Islamic studies should also be considered.

6

When the Immigration and Naturalization Service (INS)[3] adopted the enabling regulations for this section, it acknowledged Congress's stated intent for this classification to be comparable to the Department of Labor's Schedule A/Group II standard for aliens of exceptional ability. See 56 Fed. Reg. 60897, 60898 (1991). Those regulations deal with aliens who have "exceptional ability in the sciences or arts." 20 C.F.R. § 656.5(b)(1).[4] They define "science or art" as "any field of knowledge and/or skill with respect to which colleges and universities commonly offer specialized courses leading to a degree in that knowledge and/or skill." Id. When the INS adopted its regulations, it acknowledged that the "extraordinary ability" standard for immigration purposes was less restrictive than the Labor Department's "exceptional ability" standard. 56 Fed. Reg. at 60898. Thus, because the INS definition (to say nothing of the statute) includes the categories "art" and "science", and because the INS regulations are explicitly less restrictive than the Labor regulations, any field that would

---

[3]INS was USCIS's predecessor.

[4]At the time of the INS action, they were at 20 C.F.R. § 656.10. The text of the regulations remains substantially the same.

7

qualify as "science or art" under the Schedule A/Group II
analysis must be a valid field of endeavor for purposes of
analyzing an extraordinary ability petition.  See Buletini v.
INS, 860 F. Supp. 1222, 1229-30 (E.D. Mich. 1994).

    As the AAO acknowledges, Gülen "asserts that his work
consists of authoring articles and providing guidance 'to fellow
scholars in the fields of theology, political science, Islamic
studies, and education.'"  AR at 3.  Although the parties did not
submit evidence of this, we take judicial notice of the fact that
American colleges and universities commonly offer degrees in
theology, political science, and Islamic studies as well as
education.[5]  Thus, USCIS, had it properly applied its own
regulations, would have considered not only Gülen's contributions

---

    [5] The only one of these fields about which there could
even be any doubt is Islamic Studies.  A quick search of
university Web sites reveals that both graduate and undergraduate
degrees in Islamic studies are available at a wide variety of
institutions.  See, e.g., University of North Carolina, Islamic
studies in Ph.D. Programs in Religious Studies, at
http://www.unc.edu/~cernst/reliprograms.htm (listing religious
studies Ph.D. programs that accommodate a concentration in
Islamic Studies); Columbia University, Islamic Studies, at
http://www.columbia.edu/cu/gsas/departments/islamic-studies/bulle
tin.html (listing degree requirements for a Master of Arts degree
in Islamic Studies); University of Texas at Austin, Islamic
Studies Degree Plan, at http://www.utexas.edu/cola/content/
degree_plans/2006_2008_catalog/ISL06-08.pdf (listing requirements
for a Bachelors degree in Islamic Studies).

to education but also his contributions to those other fields of endeavor.  See Buletini, 860 F. Supp. at 1229.  The AAO's decision to limit its inquiry to Gülen's contributions in the narrowly-defined field of "education" was contrary to law and therefore must be reversed.

We must now examine whether, if the AAO had properly construed his field of endeavor more broadly than it did, it would have concluded that Gülen met the requirements of 8 C.F.R. § 204.5(h)(3).  The AAO has already concluded that Gülen met the requirements of 8 C.F.R. § 204.5(h)(3)(iii) and (v) and so, if we are able to identify one other of the regulatory criteria that his application meets, we must conclude that the AAO's denial of Gülen's petition was contrary to law.

We begin by examining 8 C.F.R. § 204.5(h)(3)(vi), which seeks "[e]vidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media."  The AAO, without citation to any source, determined that the word "scholarly" in this context was to be distinguished from "popular" and that scholarly works "must be aimed at an audience of scholars rather than the general public." AR at 11.  This reading is at odds both with the dictionary

definition of scholarly and with the USCIS Adjudicator's Field
Manual (AFM).

The Oxford English Dictionary defines scholarly as
"[p]ertaining to, or characterizing, a scholar; befitting, or
natural to, a scholar; learned, erudite." XIV Oxford English
Dictionary 630 (2d ed. 1989). This definition makes clear that a
work becomes scholarly by virtue of its author and its subject
matter, not its intended audience.

Further support for our conclusion that the AAO
improperly determined that Gülen's works were not scholarly is
found in the USCIS's own Adjudicator's Field Manual. In advising
field adjudicators on examining evidence submitted under 8 C.F.R.
§ 204.5(h)(3)(vi), the AFM says "The most persuasive evidence in
this regard is unsolicited contemporaneous documentation that
shows that independent experts or organizations in the field
consider the published material to be significant or that the
beneficiary's findings or methodologies have been widely cited or
adopted by the industry or professional community at large." AFM
§ 22.2(i)(1)(E)(6). This description makes no reference to the
intended audience of the works, but only to their reception in
the scholarly community. Further, the class of evidence that the
AFM describes as the "most persuasive" in this regard is

10

precisely the evidence Gülen has submitted in quantity.  Gülen's work is prominent on the syllabi of graduate and undergraduate courses at major American colleges and universities (AR 266-325) and has been the subject of international conferences of scholars (AR 351-354).  As the AAO admits, "there have been academic studies of the petitioner's 'thought.'" AR at 11 (emphasis omitted).  The AAO's conclusion that Gülen's work is not considered important by the scholarly community of which he is a part is not supported by substantial evidence.  In fact, it directly contradicts the evidence submitted to the agency.

We therefore find that there is no substantial evidence supporting the AAO's determination that Gülen has not met the requirements of 8 C.F.R. § 204.5(h)(3)(vi).  Because Gülen has met the requirements of three of the subcategories of 8 C.F.R. § 204.5(h)(3), the AAO's determination that he has not demonstrated extraordinary ability is contrary to applicable law and must be reversed.

## D.  Prospective Employment

A successful petitioner must also show that he intends to continue work in the United States in his field of endeavor. 8 U.S.C. § 1153(b)(1)(A)(ii).  While a petitioner does not have

to show an offer of employment, he must provide "clear evidence" of a continued intent to work in the field. 8 C.F.R. § 204.5(h)(5). That evidence may consist of "a statement from the beneficiary detailing plans on how he or she intends to continue his or her work in the United States." Id. Gülen filed such a statement in this case. See AR at 1053. In it he avers that "it is my intention to continue performing scholarly research, advising other academics, and consulting on conferences about my work." Id. He also claims that "[m]y presence in the United States, will allow me to continue to advocate and promote interfaith dialogue and harmony between members of different faiths and religions." Id.

The AAO found this insufficient because Gülen "does not purport to be coming to the United States to continue working in [the field of education]." AR at 14. As we have already found, the AAO's narrow construction of Gülen's field of endeavor was contrary to applicable law. If we include the broader areas of theology, political science, and Islamic studies, it is clear that Gülen's intention to produce scholarly work, advise other scholars, and consult on conferences represents a continuation of that work. The AAO seems to operate under the misapprehension that, if Gülen does not intend to teach actively in the United

States, he does not qualify.  The applicable statute includes a separate category for outstanding professors and researchers, see 8 U.S.C. § 1153(b)(1)(B), so such a construction would effectively make the alien of extraordinary ability statute redundant for academics.  Given that Congress expressly included education as a relevant field of endeavor for aliens of extraordinary ability as well, that is clearly contrary to Congressional intent.

Although the AAO expressed no concern about the level of detail in Gülen's description of his ongoing work, the Government now contends in its brief that Gülen's statement "is not the detailed plan required by the regulations."  Gov't Resp. at 24.  The Government offers no support for its contention that Gülen's level of detail is insufficient.[6]  We find that, so long as the regulations exhibit a clear intent not to require that a petitioner has an offer of employment, there is no basis for requiring a more precise statement of what activities he or she intends to engage in.  In the absence of specific employment

---

[6] Since this interpretation of the regulatory text is made only in the brief written by the Assistant United States Attorney rather than in an adjudication by the agency, it is not entitled to Chevron deference.

arrangements, few applicants could do more than identify the categories of work they intend to seek.  This Gülen has done.

We find that Gülen has clearly demonstrated his intent to continue working in his field of endeavor and has, therefore, met the requirements of 8 U.S.C. § 1153(b)(1)(A)(ii).

## E.  Benefit to the United States

The final requirement is that an applicant show that his or her "entry into the United States will substantially benefit prospectively the United States."  8 U.S.C. § 1153(b)(1)(A)(iii).  The AAO did not find -- and the Government does not contend -- that Gülen fails to meet this criterion. Based on his unchallenged statement that the visa he seeks "will allow me to continue to advocate and promote interfaith dialogue and harmony between members of different faiths and religions," A.R. at 1053, activities that are certainly a benefit to the United States in these times of tensions between adherents of different religions, we find no basis for denying his application on that basis.

## F.  Conclusion

We find that Gülen has met all the requirements of 8 U.S.C. § 1153(b)(1)(A) and the associated regulations.  For that

14

reason, we find the AAO's denial of his petition to be contrary to law and unsupported by the evidence in the record.  We will, therefore, grant Gülen's motion for partial summary judgment and order the Secretary of Homeland Security to approve Gülen's I-140 petition.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FETHULLAH GÜLEN          :          CIVIL ACTION
                         :
        v.               :
                         :
MICHAEL CHERTOFF, et al. :          NO. 07-2148

FILED

JUL 1 6 2008

MICHAEL E. ..., Clerk
By_____ Dep. Clerk

ORDER

AND NOW, this 16th day of July, 2008, upon consideration
of the joint stipulation of facts (docket entry # 28), the
Government's motion for partial summary judgment (docket entry #
29), Gülen's motion for partial summary judgment (docket entry #
30), and the parties' responses and replies (docket entries 31-
35), and for the reasons set forth in the accompanying
Memorandum, it is hereby ORDERED that:

    1.    The Government's motion for partial summary
judgment is DENIED;

    2.    Gülen's motion for partial summary judgment is
GRANTED;

    3.    The determination of the AAO is VACATED;

    4.    USCIS shall APPROVE Gülen's petition for alien
worker as an alien of extraordinary ability, document number SRC
07-035-53075 by August 1, 2008;

    5.    USCIS shall REFUND the $1000 premium processing
fee Gülen paid for his I-140 petition by August 1, 2008;

6.



A status conference shall CONVENE in Chambers (Room 10613) at 2:00 p.m. Monday, August 4, 2008 to determine What issues remain to be resolved and how this case should proceed.

BY THE COURT:

Stewart Dalzell, J.

6.    A status conference shall CONVENE in Chambers (Room 10613) at 2:00 p.m. Monday, August 4, 2008 to determine what issues remain to be resolved and how this case should proceed.

BY THE COURT:

Stewart Dalzell, J.

2